# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PATRICIA J. REILLY, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-785S |
| | : | |
| COX ENTERPRISES, INC., | : | |
| COX COMMUNICATIONS, INC., | : | |
| COX BUSINESS SERVICES, LLC, | : | |
| COX CORPORATE SERVICES, INC., | : | |
| COXCOM, LLC, CCI CORPORATE | : | |
| SERVICES, INC., ABC CORPORATION, | : | |
| JONATHAN LACROIX, and | : | |
| MARK SCOTT, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

Plaintiff Patricia J. Reilly ("Reilly" or "Plaintiff") initiated this action in Rhode Island state court, alleging that she was fired not for misconduct, but because she requested medical leave and because of her age, gender and disability, in violation of the federal Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1, 2), ("FMLA") and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, *et seq.*, ("RICRA"). She sued her supervisors, Defendants Jonathan LaCroix ("LaCroix") and Mark Scott ("Scott"), and the business entities she claims employed her, Cox Enterprises, Inc., Cox Communications, Inc., Cox Business Services, LLC, Cox Corporate Services, Inc., Coxcom, LLC, CCI Corporate Services, Inc., and ABC Corporation (collectively, "Cox").

Crafted to conform to the relaxed state-court pleading protocol, Reilly's Complaint contains relatively minimal factual allegations. Defendants removed the case to this Court and moved to dismiss, bringing the Complaint under stricter federal pleading scrutiny. This is the foundation for much of the argument in Defendants' motion – that the Complaint's factual

allegations are too skimpy to satisfy federal pleading standards. Defendants also contend that Plaintiff's claims against the individual defendants, LaCroix and Scott, fail as a matter of law, that there is no personal jurisdiction over Cox Enterprises, Inc., and that the remainder of the Cox entities (except for CoxCom, LLC) should be dismissed because only CoxCom, LLC employed Reilly. Shortly before the hearing on the motion to dismiss, Plaintiff moved to amend the Complaint to add Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, *et seq.*, ("FEPA") claims of disability, age and gender discrimination because the Rhode Island Commission for Human Rights had issued a Notice of Right to Sue letter; the proposed amendment simply adds a FEPA overlay to the RICRA factual allegations. ECF No. 18. Defendants' Motion to Dismiss (ECF No. 6) and Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 18) have both been referred to me, the former for report and recommendation and the latter for determination.

At the hearing, the Cox Defendants conceded that even they are factually confused about what Cox entity (or entities) employed Reilly; as a result, they withdrew their arguments that there is no personal jurisdiction over Cox Enterprises, Inc., and that only CoxCom, LLC employed Reilly, without prejudice to renewing either or both after further factual development. As to the motion to amend, Defendants advised the Court that they oppose it solely because it is futile, based on the same arguments that underpin their motion to dismiss Reilly's RICRA claims. Based on Fed. R. Civ. P. 15(a)(2) and in the interest of efficiency, I have granted the motion to amend by text order and consider the merits of the motion to dismiss the new FEPA claims in this report and recommendation.[1]

---

[1] This approach makes sense because, under Rhode Island law, RICRA and FEPA are analytically identical twins. See Ferro v. R.I. Dep't of Transp. ex rel. Lewis, No. CA 11-348 S, 2014 WL 652254, at *5 (D.R.I. Feb. 19, 2014) ("FEPA and RICRA claims rise and fall together"); DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 20 (R.I. 2005)

# I.    AMENDED COMPLAINT'S ALLEGATIONS[2]

From June 2004 until she was fired in August 2012, Reilly worked for Cox in Rhode Island; during most of her employment she was a Carrier Account Manager.  Am. Compl. ¶¶ 18, 19.  Until 2011, she was supervised by Defendant Mark Scott, a Vice President at Cox.  Starting in 2011, Reilly reported indirectly to Scott and began reporting directly to Defendant Jonathan LaCroix, a Manager.  Id. ¶ 20.  Reilly was the only female Carrier Account Manager of the ten employed by Cox; with no factual allegations regarding how, she blanketly alleges being "treated differently than similarly-situated male counterparts."  Id. ¶¶ 19, 30.

Currently 59 years old, Reilly suffered from severely arthritic hips during her employment at Cox.  This condition substantially limited a number of major life activities, such as standing, walking, lifting and bending.  Id. ¶ 22.  Notwithstanding her disability, of which Defendants became aware no later than 2009, Reilly's job performance was always "more than satisfactory" and she was able to perform the essential functions of her job with or without reasonable accommodation.  Id. ¶¶ 21, 23, 29.  For each of the two years prior to her firing, Reilly's job reviews stated that she "exceeded expectations;" she received the highest ratings in New England.  Id. ¶ 21.  In December 2011, Reilly informed Defendants that she needed bilateral hip replacement surgery.  Id. ¶ 24.  Skipping ahead nine months, on August 28, 2012, she informed LaCroix, then her direct supervisor, that her surgery had been scheduled for October 4, 2012.  Id. ¶¶ 20, 25, 40.  On August 30, 2012, just two days later, Defendants fired her, informing Reilly that her services were no longer needed "allegedly because of a 2006 written reprimand and because of the manner in which she allegedly communicated with a sales

---

(statutory terms in RICRA have the same meaning as FEPA); Rathbun v. Autozone, Inc., 253 F. Supp. 2d 226, 227 n.1 (D.R.I. 2003).

[2] The facts in the Amended Complaint, which are identical to those in the original Complaint, are taken as true for purposes of Defendants' motion to dismiss.  Fed. R. Civ. P. 12(b)(6).

engineer in or about July 2012, for which no written or verbal warning or reprimand was issued." Id. ¶ 26.

The Amended Complaint asserts that Reilly's firing came out of the blue; she never received any warning that her job was in jeopardy. Id. She alleges she was fired not for the reasons given by Defendants, but because "she had a disability, was perceived as having a disability, because of her age, because she asked for a reasonable accommodation in terms of a medical leave, and/or because of her gender." Id. ¶ 27. Reilly believes, and pleads on information and belief, that she was replaced by a substantially younger male who does not have a disability. Id. ¶ 28.

## II. STANDARD OF REVIEW

This case brings into sharp relief the difference in Rhode Island between federal and state-court pleading standards. I briefly sketch the background.

In a pair of watershed cases, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007), the United States Supreme Court abandoned the lax federal pleading protocol established by Conley v. Gibson, 355 U.S. 41, 45-48 (1957), holding instead that a complaint must be "plausible on its face" to sufficiently plead a cause of action. See Garcia-Catalan v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013). By contrast, Conley had directed the reviewing court to "accept the well pleaded factual averments of the * * * complaint as true, and construe these facts in the light most favorable to the [plaintiff]." Price v. Wall, 428 F. Supp. 2d 52, 54 (D.R.I. 2006) (alterations in original). Before Iqbal and Twombly, federal and state courts in Rhode Island both used the Conley standard. Id.; St. James Condo. Ass'n v. Lokey, 676 A.2d 1343, 1346 (R.I. 1996). Post Iqbal/Twombly, Rhode Island state courts stuck with Conley; recently, while acknowledging its general

inclination to follow federal case law on similar rules of civil procedure, the Rhode Island Supreme Court declined to decide whether Iqbal/Twombly should supersede Conley in Rhode Island courts, leaving "the . . . conundrum for another day." Chhun v. Mortg. Elec. Registration Sys., Inc., 84 A.3d 419, 422-23 (R.I. 2014); see id. at 422 n.5 ("it is clear that the new Federal standard cannot be blended with the traditional Rhode Island standard").

With this divergence, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be fatal to state law claims that would have survived an analogous challenge in the Rhode Island state court. Nevertheless, when this Court exercises supplemental jurisdiction over claims arising under Rhode Island substantive law, it remains obliged to apply federal procedural law and therefore is bound by Iqbal/Twombly. See Clark v. Mortg. Elec. Registration Sys., Inc., No. 12-802-M, 2014 WL 1259954, at *3 (D.R.I. Mar. 27, 2014) (federal court must apply federal procedural law, including Iqbal/Twombly, even to claims arising under state substantive law); King v. E.I. DuPont De Nemours & Co., 741 F. Supp. 2d 699, 702 (E.D. Pa. 2010) (Erie doctrine cannot be used to avoid a Federal Rule of Civil Procedure); see also Fed. R. Civ. P. 81(c)(1) (federal rules apply to civil actions after removal from state court). Accordingly, by virtue of Defendants' removal pursuant to 28 U.S.C. § 1441(c)(1)(A), based on Reilly's federal claims under FMLA, she is now in this Court, which is bound to apply the heightened federal pleading standard.

The Iqbal/Twombly plausibility inquiry requires a two-step pavane. Garcia-Catalan, 734 F.3d at 103. First, the court must distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales–Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). Second, the court must determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st

Cir. 2011) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). This context-specific inquiry does not demand "a high degree of factual specificity," but the complaint "must contain more than a rote recital of the elements of a cause of action" – "[f]or pleading purposes, circumstantial evidence often suffices to clarify a protean issue." Garcia-Catalan, 734 F.3d at 103. The complaint should not be read "too mechanically;" rather, it should be considered holistically with a heavy dose of common sense. See Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014); see also Maloy v. Ballori-Lage, 744 F.3d 250 (1st Cir. 2014); cf. Bucci v. Hurd Buick Pontiac GMC Truck, LLC, 85 A.3d 1160, 1181 (R.I. 2014) (Goldberg, J., dissenting) (at summary judgment in FEPA discrimination case, court should not engage in piece-by-piece analysis of the evidence; better to place evidence in context of whole claim).

Whether Reilly has adequately pled her case under the heightened federal pleading standard presents a nuanced question, to which I now turn.

## III.   DEFENDANTS' MOTION TO DISMISS

Defendants stage a multi-pronged attack on the sufficiency of the pleading. First, Defendants contend that the FMLA claim (Count I) fails because Reilly has not adequately pled interference where the Amended Complaint references termination for cause and because she has not adequately pled retaliation where the sole factual allegation is temporal proximity between her request for leave and her discharge. For the state-law RICRA and FEPA claims of discrimination based on gender, age and disability (Counts II through VII), Defendants say the allegations that undergird the claims are not factual – they are conclusory assertions that do not support an inference of discriminatory animus. Finally, Defendants challenge the claims against Plaintiff's supervisors, Defendants Scott and LaCroix because individual liability is not cognizable under FMLA, RICRA or FEPA.

## A. Interference and Retaliation Claims Under FMLA

Under FMLA as applied here, an eligible employee is entitled to twelve workweeks of leave during any twelve-month period for a "serious health condition" and, "on return from such leave, to be restored to the same or equivalent position." 29 U.S.C. §§ 2612(1)(D), 2614(a)(1)(A)-(B). Employees who are denied this entitlement can sue employers under an interference theory, a retaliation theory or both. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998); Kenney v. Bethany Home of R.I., C.A. No. 09-cv-289-ML, 2011 WL 1770537, at *2 (D.R.I. May 9, 2011). An interference claim arises when an employer prevents its employee from taking FMLA leave; retaliation occurs when the employee suffers an adverse employment action for invoking FMLA rights. See 29 U.S.C. § 2615(a)(1)-(2); Hodgens, 144 F.3d at 159; Carrero-Ojeda v. Autoridad de Energia Electrica, 870 F. Supp. 2d 313, 321 (D.P.R. 2012).

### i. FMLA Interference

To recover on an FMLA interference claim, Plaintiff must demonstrate she was denied substantive FMLA rights to which she was entitled. Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331(1st Cir. 2005). To make out an interference claim, Plaintiff must establish that: (1) that she is an "eligible employee" under FMLA; (2) that she worked for an employer under FMLA; (3) that she was entitled to leave under FMLA; (4) that she gave adequate notice to her employer of her intention to take leave; and (5) that her employer denied her benefits to which she was entitled by FMLA. Surprise v. Innovation Grp., Inc., 925 F. Supp. 2d 134, 145 (D. Mass. 2013). Employer motive plays no role in a "claim for substantive denial of benefits," and the employee need not show retaliatory or discriminatory animus. Colburn, 429

F.3d at 332; Carrero-Ojeda, 870 F. Supp. 2d at 320; Gonzalez-Rodriguez v. Potter, 605 F. Supp. 2d 349, 370 (D.P.R. 2009).

Defendants argue that Plaintiff has not stated a claim for FMLA interference because, as a matter of law, an employer does not interfere with an employee's FMLA rights when the employer terminates the employee for cause, regardless of whether the termination follows the employee's exercise of FMLA rights. See Dressler v. Cmty. Serv. Commc'ns, Inc., 275 F. Supp. 2d 17, 24 (D. Me. 2003), aff'd, 115 F. App'x 452 (1st Cir. 2004) (claim that plaintiff's position was eliminated because of FMLA leave is not interference, but rather retaliation). In Defendants' view, the reference in the Amended Complaint to Cox's claim that her termination was misconduct-based establishes that Cox would have made the same decision to terminate Reilly on August 30, 2012, regardless of her leave request two days earlier. See Hollins v. Ohio Bell Tel. Co., 496 F. Supp. 2d 864, 872 (S.D. Ohio 2007) (no FMLA violation occurs if employer had legitimate reason unrelated to exercise of FMLA rights to warrant termination). Defendants point to the timing of Reilly's termination as legally significant, arguing that when an employee is terminated for cause prior to taking leave (but after she had requested it), the interference claim must be dismissed unless the pleading alleges facts that contest the legitimacy of the decision to terminate. See Arban v. W. Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003) ("[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request.") (alteration in original).

Applying common sense and reading the Amended Complaint holistically, Plaintiff has plausibly alleged that her firing was triggered by her leave request and that it resulted in the denial of FMLA rights to which she was entitled when she requested leave. Plaintiff alleges that

she has severely arthritic hips, that Defendants knew she required surgery and that two days before she was fired, Plaintiff informed her supervisor that the surgery had been scheduled and that she would need FMLA medical leave.  In alleging that she received positive performance reviews, was a top performer and had no warning she was about to be fired, the Amended Complaint permits the inference that Reilly would not have been terminated – that is, the reasons given for termination were pretextual – except to deny her FMLA benefits.  See Maloy, 744 F.3d at 253 (at pleading stage, court demands only telltale clues from circumstances alleged in complaint).  This states a plausible claim for interference.  See Demyanovich v. Cadon Plating & Coatings, L.L.C., No. 13-1015, 2014 WL 1259603, at *8 (6th Cir. Mar. 28, 2014) (allegedly-pretextual termination after request for medical leave precluded summary judgment on FMLA interference claim); Avila v. El Paso Cnty., No. EP-12-CV-293-KC, 2013 WL 2458619, at *5 (W.D. Tex. June 6, 2013) (termination four days after plaintiff notified employer of possible need to take FMLA leave states interference claim); Turevsky v. FixtureOne Corp., 904 F. Supp. 2d 454, 466 (E.D. Pa. 2012) ("firing an employee for a valid FMLA request can constitute retaliation as well as interference."); cf. Colburn, 429 F.3d at 331 (interference may, depending on the facts, cover both retaliation claims and non-retaliation claims).

ii.    **FMLA Retaliation**

"[R]etaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."  Carrero-Ojeda, 870 F. Supp. 2d at 321.  To state a claim for retaliation, the employer's adverse employment action must be in retaliation for exercise of FMLA rights.  Colburn, 429 F.3d at 332.  "[A] crucial component of an FMLA retaliation claim is some animus or retaliatory motive on the part of the plaintiff's

employer that is connected to protected conduct." Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 8 (1st Cir. 2012); Hodgens, 144 F.3d at 165.

Defendants attack Plaintiff's retaliation claim as insufficient because it pleads retaliatory motive based solely on the temporal proximity of the termination and the request for leave. Defendants contend that if temporal proximity is sufficient, any employee who anticipates the axe could simply request FMLA leave to create a colorable retaliation claim. Once temporal proximity is stripped away, Defendants argue, there are no remaining facts to support an FMLA retaliation claim. Alternatively, Defendants say that Plaintiff's assertion of a "two-day" time-frame for temporal proximity is refuted by her own allegation that she informed Defendants in December 2011 that she needed surgery, nine months before her termination. Since gaps of just three or four months have been held insufficient to permit the inference of a causal connection based on temporal proximity, Defendants argue that a nine-month period is insufficient as a matter of law. See, e.g., Bonilla v. Electrolizing, Inc., 607 F. Supp. 2d 307, 321 (D.R.I. 2009) (at summary judgment, two-month gap between alleged report of sex discrimination and adverse employment action insufficient to prove pretext for discrimination); Calero-Cerezo v. U.S. Dep't of Justice, 355 F. 3d 6, 25 (1st Cir. 2004) (temporal proximity may establish retaliation when events are "very close" – one month is close enough).

Both of these arguments founder on the holistic reading this Court must give to the Amended Complaint at the Fed. R. Civ. P. 12(b)(6) stage. Alleged facts demonstrating temporal proximity between the protected conduct and the adverse employment action is sufficient to make a claim plausible when considered in tandem with a common sense reading of the pleading. See Garayalde-Rijos v. Municipality of Carolina, No. 13-1487, 2014 WL 1270607, at *8 & n.8 (1st Cir. Mar. 28, 2014) (temporal proximity of five months sufficient to make

inference of retaliation plausible; plaintiff may proceed to take discovery to unearth additional evidence); Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 28 (1st Cir. 2012) (close temporal proximity between protected activity and termination itself supports an inference of retaliation). To clear the Fed. R. Civ. P. 12(b)(6) hurdle, all that Reilly needs to show are sufficient facts that make the non-innocent explanation plausible.  Garayalde-Rijos, 2014 WL 1270607, at *8 n.8; Rodriguez-Vives, 743 F.3d at 286.

Plaintiff has met this low bar – she alleges she was terminated two days after she notified her supervising manager of her need to take medical leave for hip replacement surgery.  Plaintiff has also alleged that her performance was always more than satisfactory, she exceeded expectations over the last two years and she never received any warning of her termination. Defendants may be correct that their proffered reasons for firing her are legitimate, or that she really requested medical leave as early as December 2011, but at this stage, all Plaintiff needs to show are facts sufficient to permit the plausible inference that she was fired because of her request for leave in August 2012.  Rodriguez-Vives, 743 F.3d at 286.  She has clearly done so – her FMLA claim for retaliation should survive.

### B.    Age, Gender and Disability Claims under RICRA and FEPA

FEPA provides that it is unlawful "[f]or any person, whether or not an employer, employment agency, labor organization, or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful employment practice . . . ."  R.I. Gen. Laws § 28-5-7(6).  RICRA prohibits discrimination in all phases of employment.  See Ward v. City of Pawtucket Police Dep't, 639 A.2d 1379, 1381 (R.I. 1994).  FEPA and RICRA both prohibit an employer from discharging an employee on the basis of age, gender and disability.

See R.I. Gen. Laws §§ 28-5-7(1)(i), 42–112–1; Bucci, 85 A.3d at 1169; Ferro, 2014 WL 652254, at *5.

Defendants argue that Reilly's state-law causes of action based on RICRA and FEPA should be dismissed because the Amended Complaint does not contain sufficient factual content to permit a plausible inference that she was terminated based on disability, age or gender. According to Defendants, Plaintiff simply alleges that that she was fired because of her disability, age and gender, without supplying any facts to support these conclusions. Since the Amended Complaint is comprised only of formulaic recitations and conclusory allegations, Defendants argue that all the RICRA claims (Counts II, III and IV) and FEPA claims (Counts V, VI and VII) should be dismissed for failure to state a claim. See Eldredge v. EDCare Mgmt., Inc., No. 13-61373-CIV, 2014 WL 590336, at *2 (S.D. Fla. Feb. 14, 2014) (plaintiff must plead facts in support of discrimination claims; insinuations and subtle hints "will not do").

### i. Disability Claims under RICRA and FEPA

Defendants' attack on Plaintiff's disability claim under RICRA and FEPA rehashes their view that her FMLA claim fails because its sole factual support is the temporal proximity between her leave request and her termination – the argument fails for the same reasons. Both FEPA and RICRA define disability to include "any physical or mental impairment which substantially limits one or more major life activities" and define "major life activities" to include, without limitation, "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Poulin v. Custom Craft, Inc., 996 A.2d 654, 657 n.3 (R.I. 2010) (citing R.I. Gen. Laws §§ 42-112-1, 28-5-6(4)(ii)). To establish a disability discrimination claim[3] under RICRA and FEPA, a plaintiff must show (1) that she engaged in

---

[3] In addition to straight discrimination based on her disability, Reilly's Amended Complaint also alleges that Defendants failed to accommodate her disability. Am. Compl. ¶ 27. To establish a claim of failure to accommodate

protected conduct; (2) that she was discharged; and (3) that there is a causal connection between her protected conduct and the discharge. Kelly v. Verizon Servs. Corp., C.A. No. 08-282-ML, 2008 WL 4547493, at *4 (D.R.I. Oct. 8, 2008). Plaintiff has clearly met this standard: she alleges that she was an excellent employee who was fired two days after she requested leave to address her severely arthritic hips, a condition that substantially limited several major life activities. A holistic read of the Amended Complaint, taking account of the inferences that arise from these allegations, demonstrates that Plaintiff has pled sufficient facts to establish plausible claims under RICRA and FEPA based on disability.

### ii. Age and Gender Claims Under RICRA and FEPA

Unlike her RICRA and FEPA disability claims, Reilly's age and gender claims raise knotty questions over the quantum required to plead a plausible claim in federal court.

A short sojourn to examine the analytical framework used for RICRA and FEPA at the summary judgment phase is necessary to set the stage. Rhode Island courts analyze employment discrimination claims brought under RICRA and FEPA by borrowing the burden-shifting framework for employment discrimination established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Gregory v. Centreville Sav. Bank, C.A. No. 11-423M, 2013 WL 244765, at *5 (D.R.I. Jan. 4, 2013). Under McDonnell Douglas, a RICRA/FEPA plaintiff must first establish a *prima facie* case, which gives rise to an inference of discrimination. See Gregory, 2013 WL 244765, at *5. If the employer states a legitimate, nondiscriminatory reason for its decision, the inference of discrimination disappears

---

a disability under FEPA and RICRA, a plaintiff must show: (1) that the employee has a disability; (2) that the employee "was nevertheless able to perform the essential functions of his job with reasonable accommodation, and at no 'major cost' to his employer"; and (3) that the employer, "despite knowing of his alleged disability, did not reasonably accommodate it." Kelly v. Verizon Servs. Corp., C.A. No. 08-282-ML, 2008 WL 4547493, at *3 (D.R.I. Oct. 8, 2008). Whether a request for leave is reasonable turns on the facts of the case. Id. Since denial of permission to take medical leave can constitute a failure to accommodate, id. at *3-4, Plaintiff has stated a claim based on disability, whether proceeding on a discrimination theory or failure-to-accommodate theory.

and the plaintiff is required to show that the employer's stated reason is a pretext for discrimination. Kosereis v. Rhode Island, 331 F.3d 207, 212 (1st Cir. 2003). For an age-based *prima facie* case under FEPA/RICRA, a plaintiff must establish that: (1) she was at least forty years of age; (2) her job performance met the employer's legitimate expectations; (3) the employer subjected her to an adverse employment action; and (4) the employer had a continuing need for the services. Bucci, 85 A.3d at 1170. For a *prima facie* case of gender discrimination, a FEPA/RICRA plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was performing her job at a level that rules out firing for inadequate job performance; (3) she suffered an adverse job action by her employer; and (4) her employer sought a replacement for her with roughly equivalent qualifications. DeCamp, 875 A.2d at 21.

Here, the parties generally agree that Reilly has pled a *prima facie* case of both age and gender discrimination under RICRA and FEPA.[4] She has alleged that she is a female and 59 years old, that her job performance had always been more than satisfactory, that she "exceeded expectations" for the last two years, that she suffered an adverse job action when she was terminated, and that she "was replaced by a male who was substantially younger and does not have a disability." Am. Compl. ¶¶ 21, 27, 28. The rub is that pleading a *prima facie* case is not the same as pleading a plausible claim. See generally Charles A. Sullivan, Plausibly Pleading Employment Discrimination, 52 Wm. & Mary L. Rev. 1613 (2011). McDonnell Douglas is a

---

[4] Defendants challenge one element of Plaintiff's *prima facie* case of discrimination – her allegation "upon information and belief" that she was replaced by a substantially younger, non-disabled male. To credit this argument would impose too harsh a standard. The cases are uniform in holding that "information and belief" allegations are permissible at the pleading stage, particularly in employment cases, where "some latitude may be appropriate in applying the plausibility standard" where "a material part of the information needed is likely to be within the defendant's control." Garcia-Catalan, 734 F.3d at 104 (internal quotation marks omitted); see also Grajales v. P.R. Ports Auth., 682 F.3d 40, 49 (1st Cir. 2012) ("'[s]moking gun' proof of discrimination is rarely available . . . at the pleading stage"); Menard v. CSX Transp., Inc., 698 F.3d 40, 44 (1st Cir. 2012) ("information and belief" is appropriate in pleadings, does not mean pure speculation); Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 73 (1st Cir. 2000) (plaintiff entitled to make allegations on information and belief, as long as there is good faith basis for doing so after reasonable inquiry).

gatekeeping evidentiary standard, not a pleading standard. See Garayalde-Rijos, 2014 WL 1270607, at *7 (error to treat a *prima facie* case as a pleading standard, not an evidentiary standard). Even after Iqbal/Twombly, a complaint can proceed despite the failure to plead a *prima facie* case of discrimination, "[a]lthough a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial." Rodriquez-Reyes, 711 F.3d at 53-54. The task here is to determine whether, if a *prima facie* case is not necessary for a complaint to survive the pleading stage, is it nevertheless sufficient to state a claim under Fed. R. Civ. P. 12(b)(6).

Defendants are right that Reilly has failed to plead facts that would permit an inference that her employer's real reason for terminating her was discriminatory animus based on age or gender. The Amended Complaint's only allegations supporting the age and gender claims are (1) she was fired not for the reasons given by Defendants, but "because of her age . . . and/or because of her gender;" (2) she was "treated differently than similarly-situated male counterparts;" and (3) she was the only woman in the role of Carrier Account Manager, out of ten across the country, and was replaced by a man. Am. Compl. ¶¶ 19, 27, 30. Under Twombly/Iqbal, the first two are conclusory statements that must be disregarded. Morales-Cruz, 676 F.3d at 225-26 ("speculation, unaccompanied by any factual predicate, is not sufficient to confer plausibility;" affirming Rule 12(b)(6) dismissal of claim lacking facts to support inference of discriminatory animus); Mayale-Eke v. Merrill Lynch, 754 F. Supp. 2d 372, 377 (D.R.I. 2010) (allegation that plaintiff was treated less favorably than similarly-situated employees is wholly conclusory and amounts to nothing more than a "formulaic recitation" of a discrimination claim). The residue – that she was the only woman in her position and was replaced by a younger man – is insufficient to support a plausible inference of age or gender discrimination. See Han v. Univ.

of Dayton, 541 F. App'x 622, 627 (6th Cir. 2013) (allegation that Asian male replaced by white male as adjunct professor insufficient to state claim); Ray v. Amelia Cnty. Sheriff's Office, 302 F. App'x 209, 211-12 (4th Cir. 2008) (per curiam) (discrimination complaint survives when allegation that plaintiff was replaced by younger employee amplified by allegations that replacement was less qualified and that there were potential reasons for termination related to age); Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc., 724 F. Supp. 2d 382, 390 (W.D.N.Y. 2010) (bare allegation that other employees over forty fired and that defendant has a practice of firing older employees insufficient at Fed. R. Civ. P. 12(b)(6) stage for age claim).

All that remains is the inference of discrimination arising from pleading a *prima facie* case under McDonnell Douglas. Sanchez v. P.R. Oil Co., 37 F.3d 712, 720 (1st Cir. 1994) ("[o]nce a prima facie . . . case has been established under the McDonnell Douglas framework, an inference of discrimination arises"). At least one commentator has suggested that courts frequently conflate the *prima facie* standard and the plausibility standard in ruling on motions to dismiss in employment discrimination cases. See Charles A. Sullivan, Plausibly Pleading Employment Discrimination, 52 Wm. & Mary L. Rev. 1613, 1654 (2011) ("it would take a determined district court judge . . . to find that a McDonnell Douglas prima facie case was insufficient to satisfy the plausibility standard, because McDonnell Douglas is so well-recognized by circuit court precedent to create a presumption of discrimination"). However, our Circuit emphasizes that the McDonnell Douglas *prima facie* standard is not a pleading standard. See Garayalde-Rijos, 2014 WL 1270607, at *7; Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). Thus, while the *prima facie* elements are not irrelevant to the plausibility determination in discrimination suits, they are only part of the background against which a plausibility determination should be made. Rodriguez-Reyes, 711 F.3d at 54; cf. Aly v.

Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 46-47 (1st Cir. 2013) (once case submitted to jury, the key question is "the ultimate question of discrimination vel non"). Rather, if a complaint states a *prima facie* case by alleging merely that plaintiff is a woman or over forty, who was fired, and then replaced by a younger or male counterpart, a plausibility analysis remains applicable to determine whether the pleading states a claim under RICRA and FEPA. See Sherrard v. Boeing Co., No. 4:13-CV-1015 CEJ, 2013 WL 5786638, at *3 (E.D. Mo. Oct. 28, 2013) (complaint that meets *prima facie* standard required to be amended to add facts sufficient to satisfy plausibility standard); Urbanski v. Tech Data, Civil No. 3:07CV017, 2008 WL 141574, at *9 (N.D. Ind. Jan. 11, 2008) (general allegations that establish *prima facie* case do not satisfy plausibility, allegations of parallel conduct without more is insufficient). Here, I find that more factual content is required to nudge Reilly's pleading from conceivable to plausible. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 19 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 680). Accordingly, I conclude that Reilly's age and gender claims under RICRA and FEPA fail to state a claim.

That does not end the matter. This is a case that Reilly filed in a court governed by the Conley pleading standard, where her RICRA/FEPA age and gender claims would likely have survived a motion to dismiss. See Barrette v. Yakavonis, 966 A.2d 1231, 1234 (R.I. 2009). Accordingly, I recommend that this Court afford her an opportunity to re-plead with facts sufficient to satisfy Iqbal/Twombly; if she fails to re-plead within thirty days of this Court's adoption of this report and recommendation, I recommend that the RICRA/FEPA claims based on age and gender discrimination be dismissed.

### C. Individual Liability Against Cross and LaCroix

The last arrow in Defendants' quiver is their motion to dismiss all of Reilly's claims against the individual defendants, Scott and LaCroix, on the theory that FMLA, RICRA and FEPA do not provide for individual liability.

###### i.      Individual Liability under FMLA

By its terms, FMLA applies to "employers," 29 U.S.C. § 2615(a)(1)-(2), defined as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees . . . ."  29 U.S.C. § 2611(4)(A)(i).  "Employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii).  Defendants argue that FMLA's definition of "employer" means that individuals are not liable.  By analogy to Title VII, and in reliance on the First Circuit's decision in Fantini v. Salem State College, 557 F.3d 22, 31 (1st Cir. 2009), Defendants contend that, because there is no individual liability in Title VII employment discrimination cases, there should be no individual liability under FMLA.

Defendants are on the wrong side of this argument.  While in some Circuits, including this one, "the issue of individual liability under the FMLA" remains "an open question," Bonilla, 607 F. Supp. 2d at 324 n.18; see Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam), and other Circuits are split, the national trend is towards permitting individual liability and "a majority of federal courts to address the issue of private supervisor liability have concluded that such liability exists."  Crittendon v. Arai Americas, Inc., Civil No. 2:13-CV-567, 2014 WL 354517, at *3 (E.D. Va. Jan. 28, 2014); see also Chase v. U.S. Postal Serv., Civil Action No. 12-11182-DPW, 2013 WL 5948373, at *13 (D. Mass. Nov. 4, 2013) (in public employment context, Third, Fifth and Eighth Circuits have imposed individual liability under FMLA, while Sixth and Eleventh Circuits have reached opposite conclusion).  Similarly, the

trend within this Circuit favors individual liability.  See Meara v. Bennett, 27 F. Supp. 2d 288,

291 (D. Mass. 1998); see also Chase, 2013 WL 5948373, at *14 (definition of employer under

FMLA plainly includes persons other than the employer itself); Brunelle v. Cytec Plastics, Inc.,

225 F. Supp. 2d 67, 82 (D. Me. 2002) (FMLA imposes individual liability over supervisors at

private companies); but see Zayas v. Estado Libre Asociado de P.R., Civil No. 04-1017(JAG-

CVR), 2007 WL 7126530, at *5 (D.P.R. Feb. 15, 2007) (no individual liability under FMLA for

public employees).

      The FMLA definition of "employer," which expressly includes "any person who acts,

directly or indirectly, in the interest of an employer to any of the employees of such employer,"

29 U.S.C. § 2611(4), strongly suggests that individual liability is contemplated by the Act.

Meara, 27 F. Supp. 2d at 291.  Moreover, the FMLA definition of "employer" is parallel to that

in the Fair Labor Standards Act, 29 U.S.C. § 203(d) ("FLSA"), a statute that provides for

individual liability.  Meara, 27 F. Supp. 2d at 291; see Bonilla, 607 F. Supp. 2d at 323 n.18 (most

courts find individual liability appropriate based on FMLA definition of "employer" and parallel

definition in FLSA); Brunelle, 225 F. Supp. 2d at 82 (courts that have found FMLA individual

liability have looked to parallel FLSA definition).  And while the definitions of "employer"

under FMLA and FLSA are nearly identical to each other, they differ markedly from the Title

VII definition, as interpreted in Fantini.  See Meara, 27 F. Supp. 2d at 291.  Based on this

reasoning, I recommend that this Court follow the holdings of Meara and Brunelle that FMLA,

like FLSA, provides for individual liability.  See also Haybarger v. Lawrence Cnty. Adult Prob.

& Parole, 667 F.3d 408, 417 (3d Cir. 2012) (analogizing FMLA to FLSA and finding that

individual liability exists under FMLA).

Defendants have a back-up argument: if individuals may be liable under FMLA, Plaintiff has failed to allege sufficient facts for individual liability to apply to Scott and LaCroix. Citing Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983), a FLSA case, Defendants assert that individual liability should only apply in situations where the employee is a corporate officer with a significant ownership interest who had operational control of significant aspects of the corporation's day-to-day functions, including compensation of employees, and not a mere supervisory employee. See Brunelle, 225 F. Supp. 2d at 82 (defendant at bottom of four rungs of management "not a prominent enough player" to be considered FMLA employer); but see Shockley v. Stericycle, Inc., No. 13-CV-01711, 2013 WL 5325632, at *4 (N.D. Ill. Sept. 19, 2013) (individual liability imposed on individual who had supervisory authority over complaining employee and was responsible for alleged violation). Defendants' argument overlooks the "narrow" nature of the holding in Donovan. 712 F.2d at 1514 (no error to impose individual liability on owner who had significant control, but not foreclosing individual liability otherwise). Rather, "[a] person may be individually liable under the FMLA if he or she had supervisory authority over the plaintiff and was partly responsible for the alleged violation." Coleman v. Ill. Dep't of Human Servs., No. 09 C 3596, 2013 WL 5348314, at *18 n.18 (N.D. Ill. Sept. 24, 2013).

Plaintiff alleges that Scott was a Vice President and her direct, and later indirect, supervisor and that LaCroix was a Manager who became her direct supervisor starting in 2011; it was LaCroix whom Reilly informed of her impending surgery. Am. Compl. ¶¶ 20, 40. At the pleading stage, this is enough to establish that Scott or LaCroix had supervisory authority over Reilly and to permit the inference that either Scott or LaCroix or both were responsible for the alleged FMLA violations. While Plaintiff will likely need to marshal more for the summary

judgment phase of this case, <u>Brunelle</u>, 225 F. Supp. 2d at 82 (summary judgment in favor of low-ranking individual), fairly read, her Amended Complaint plausibly alleges that she was a senior employee at Cox, a Carrier Account Manager of which only ten existed across the country, who was likewise supervised by senior employees – Scott (a Vice President) and LaCroix (a Manager) – at the time she was fired. These allegations plead enough facts to unlock discovery to determine whether Scott and LaCroix are subject to individual liability under FMLA. <u>See</u> <u>Garcia-Catalan</u>, 734 F.3d at 103 ("The circumstances in the complaint create a reasonable expectation that discovery may yield evidence of . . . allegedly tortious conduct. No more is exigible.").

### ii.        Individual Liability under RICRA and FEPA

Defendants contend that, under RICRA and FEPA, claims for individual liability against co-workers are not cognizable because the most analogous federal anti-discrimination statutes, Title VII, ADEA and ADA, do not provide for individual liability. <u>See</u> <u>Roman-Oliveras v. P.R. Elec. Power Auth.</u>, 655 F.3d 43, 52 (1st Cir. 2011); <u>Fantini</u>, 557 F.3d at 31; <u>Miranda v. Deloitte LLP</u>, Civil No. 12-1271 (FAB), 2013 WL 5817650, *5 (D.P.R. Oct. 10, 2013). When analyzing employment discrimination claims under RICRA and FEPA, Defendants point out that Rhode Island courts routinely apply the test for discrimination claims utilized for Title VII claims. <u>See</u> <u>Rathbun v. Autozone, Inc.</u>, 361 F.3d 62, 64 (1st Cir. 2004); <u>Moran v. GTECH Corp.</u>, 989 F. Supp. 84, 91 (D.R.I. 1997); <u>Bina v. Providence Coll.</u>, 844 F. Supp. 77, 86 (D.R.I. 1994). Accordingly, Defendants urge the Court to follow the reasoning the First Circuit employed in <u>Fantini</u>, 557 F.3d at 31, (a Title VII case), and hold that Plaintiff's RICRA and FEPA claims against LaCroix and Cross fail as a matter of law because Title VII claims of individual liability are not cognizable.

This Court need not wade deeply into these waters; recently, Chief Judge Smith certified to the Rhode Island Supreme Court the precise question whether FEPA provides for individual liability.  Mancini v. City of Providence, Civil Action No. 13-92 S, 2013 WL 5423717, at *2, 3 (D.R.I. Sept. 26, 2013) ("Trial court judges who have considered the issue of individual liability under FEPA have disagreed on the answer.").  While the certified question asks only for a statutory interpretation of FEPA, the response is overwhelmingly likely to be relevant to claims against individuals under RICRA.   See Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 571 (D.R.I. 1996) (interpreting RICRA and FEPA in tandem to provide for individual liability); Evans v. R.I. Dep't of Bus. Regulation, No. Civ.A. 01-1122, 2004 WL 2075132, at *3 (R.I. Super. Ct. Aug. 21, 2004) (same).  The Rhode Island Supreme Court is currently mulling the certified question and likely to issue a written decision in the coming months.  Accordingly, I recommend that this Court stay any decision on individual liability under RICRA and FEPA against Scott and LaCroix pending the outcome of Mancini.

## IV.   CONCLUSION

Based on the foregoing, and focusing on Reilly's Amended Complaint, I recommend as follows:

- That the motion to dismiss Plaintiff's FMLA claim (Count I) and her disability claim under RICRA (Count IV) be DENIED;

- That the motion to dismiss Plaintiff's claims based on age and gender discrimination under RICRA and FEPA (Counts II, III, V and VI) be GRANTED, provided that Plaintiff be allowed thirty days following acceptance of this report and recommendation to file a Second Amended Complaint that includes factual allegations that support her claims; if she fails to do so, Counts II, III, V and VI should be dismissed;

- That the motion to dismiss Plaintiff's FMLA claim (Count I) against the individual defendants, LaCroix and Scott, based on the lack of individual liability be DENIED; and

- That the motion to dismiss Plaintiff's FEPA and RICRA claims (Counts II, III, IV, V, VI and VII) against the individual defendants, LaCroix and Scott, based on the lack of individual liability be STAYED pending the Rhode Island Supreme Court's decision on individual liability in <u>Mancini v. City of Providence</u>, Civil Action No. 13-92 S, 2013 WL 5423717 (D.R.I. Sept. 26, 2013).

In addition, based on Defendants' voluntary withdrawal of the motion to dismiss Cox Enterprises, Inc., for lack of personal jurisdiction and all of the Cox entity defendants except CoxCom, LLC based on failure to state a claim because only it employed Plaintiff, I recommend those aspects of Defendants' motion be DENIED WITHOUT PREJUDICE.

Any objection to this report and recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its service. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. <u>See</u> <u>United States v. Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 16, 2014